# REDACTED SEARCH WARRANT

## No. 21-01639MB

In the Matter of the Search of

- John Wayne Hargrove (DOB: ; SSN: ███████, AZDL: ███████),
- ███████, Pearce, Arizona 85625, Including all outbuildings and appurtenances thereto,
- 1997 green Jeep Grand Cherokee bearing Arizona Tag ██████; Any other vehicles.

# United States District Court
### *for the District of Arizona*

| | |
|---|---|
| *In the Matter of the Search of*<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>• John Wayne Hargrove (DOB: ███; SSN: ███████, AZDL: ████████)<br>• ████████<br>Pearce, Arizona 85625<br>Including all outbuildings and appurtenances thereto<br>• 1997 green Jeep Grand Cherokee bearing Arizona Tag ████;<br>• Any other vehicles | No.   23-07277MB (JR)<br><br>**APPLICATION FOR<br>SEARCH WARRANT** |

I, Cameron Anders, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that ☒ on the person of or ☒ on the premises known as *(name, description and/or location)*:

**See Attachment A attached and incorporated by reference herein**

located in the District of Arizona there is now concealed *(identify the person or describe the property to be seized)*:

**See Attachment B and C, attached and incorporated by reference herein**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of 18 U.S.C. § 842(i)(1), 18 U.S.C. § 922(g)(1), 26 U.S.C. § 5861.

The application is based on these facts:

**See attached Affidavit incorporated by reference herein.**

Reviewed by AUSA Liza M. Granoff
*AUSA printed last name and inked initials*

Digitally signed by LIZA GRANOFF
Date: 2023.05.23 15:11:50 -07'00'

Subscribed and Sworn to telephonically.

5/23/2023
_____
*Date*
Tucson, Arizona
_____
*City and State*

CAMERON S ANDERS  Digitally signed by CAMERON S ANDERS
Date: 2023.05.23 15:26:17 -07'00'
_____
*Applicant's signature*
Cameron Anders, HSI Special Agent
*Printed name and title*

*Jacqueline M. Rateau*
_____
*Judge's signature*
Jacqueline M. Rateau, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

Your affiant, Cameron Anders, a Special Agent with Homeland Security Investigations (HSI), assigned to Douglas, Arizona, being duly sworn, deposes and states as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been employed with HSI since June 2022. I have been assigned to the Border Enforcement Security Task Force and am responsible for conducting investigations into violations of Titles 18, 19, 21, and 31 of the United State Code.

2.      On October 21, 2009, prior to joining HSI, your Affiant graduated from the United States Border Patrol Academy located at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico. During this training, I received approximately 480 hours of instruction. From April to August 2015, your Affiant attended and graduated from the United States Customs and Border Protection Field Operations Academy located at FLETC in Glynco, Georgia. During this training, your Affiant received approximately 800 hours of instruction. From July 2022 to February 2023, your Affiant, attended FLETC and completed the Criminal Investigator Training Program as well as the HSI Special Agent Training, receiving approximately 1,040 hours of additional law enforcement training.

3.      From April 2021 to May 2022, your Affiant, was assigned as a Task Force Officer with HSI and conducted investigations into cross border smuggling of persons, weapons, weapons components, ammunition, narcotics, and currency. Your Affiant has conducted physical and electronic surveillance, is familiar with counter-surveillance tactics, has written and executed search warrants, reviewed documents of narcotic and human smugglers, and interviewed and debriefed confidential sources of information and cooperating defendants regarding the function of human smuggling, weapons trafficking, and drug trafficking organizations.

4.     As an HSI Special Agent, I am a federal law enforcement officer within the meaning of Rule 41(a), Federal Rules of Criminal Procedure.   As such I am authorized to investigate violations of the laws of the United States of America, including 26 U.S.C. § 5861(d), which states as follows:

> 26 U.S.C. 5861(d) Prohibited Acts
> It shall be unlawful for any person- …
>
> (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

Additionally, I am aware that under 26 U.S.C. § 5845, the definition of "firearm" includes "a destructive device" which, according to 26 U.S.C § 5845 (f), is defined as:

> (1) any explosive, incendiary, or poison gas, (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device;
>
> (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes…

5.     I am also familiar with 26 U.S.C. § 5861(f), which states that it is unlawful for any person to make a firearm in violation of said chapter.

6.     I am familiar with federal laws including 18 U.S.C. § 922(g)(1), which states:

> (g) It shall be unlawful for any person—
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

7.    I am familiar with federal laws including 18 U.S.C. § 842(i)(1), which states:

> It shall be unlawful for any person who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to ship or transport any explosive or to receive or possess any explosive which has been shipped or transported in or affecting interstate or foreign commerce.

8.    I am also aware that under 18 U.S.C. § 841, the definition of explosive materials means explosives, blasting agents, and detonators. Explosives means any chemical compound mixture, or device, the primary or common purpose is to function by explosion; the term includes, but is not limited to, dynamite and other high explosives, black powder, pellet powder, initiating explosives, detonators, safety fuses, squibs, detonating cord, igniter cord and igniters.

9.    Based upon my training and experience in conducting criminal investigations involving violations of federal explosives laws, I know that individuals involved in the illegal manufacture and/or possession of explosive and destructive devices have developed methods to insulate their illegal activities from law enforcement detection.  I also know that these individuals will often wear latex and vinyl gloves during this process to prevent fingerprints from being left on items that could later be used as evidence against them.  In addition, individuals involved in the illegal manufacture or possession of explosive and destructive devices have been known to conceal them inside of other objects to avoid detection by law enforcement officials.

10.    I know that destructive devices in the form of pipe bombs and improvised explosive devices are often made utilizing equipment that is accessible and readily available to the bomb builder.  These individuals will utilize materials and equipment present at their residence, shop areas, and work site.  Equipment that is utilized to construct explosive and destructive devices often include drills, saws, wire cutters, razor blades, mixing bowls, glassware, among other items left to the imagination of the bomb builder.

11.     Based on my training and experience, I know that by their nature pipe bombs and improvised explosive devices are often created by using materials readily available to the public and commonly found in workshop areas. Because of how they are constructed, there is typically some excess material or "scrap" items left over from the construction of pipe bombs and improvised explosive devices.

12.     Explosive powder can be purchased and/or can be created/made by using chemical precursors or other materials, specifically explosive powder and/or precursor chemicals or substances used to create explosive powder, specifically nitroglycerin, nitrocellulose, potassium nitrate, nitric acid, charcoal, and sulfur.

13.     I know that the Bureau of Alcohol Tobacco and Firearms (ATF) Technology Branch considers a pipe bomb and improvised explosive devices as a "destructive device" and that it can only be lawfully possessed by subjects who have received approval from the ATF National Firearms Act Branch.

14.     Based on my training and experience, I am aware that cellular telephones, tablets, computers, and other forms of electronic storage equipment are often used by certain individuals to facilitate the commission of criminal acts. Further, I am aware that important evidence is often located within call histories, text messages, instant messages, e-mails, and voice mails or voice recordings. I also know that cellular telephones, tablets, computers, and other forms of electronic storage equipment are often capable of taking and storing photographs that may have captured evidence of criminal acts.

15.     I know that electronic devices, such as cellular telephones, tablets, computers, and other electronic storage media can store information for long periods of time. This information can sometimes be recovered with forensics tools.

16.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. This affidavit is made in support

of an application for a search warrant for the following address, vehicle, and person located in Cochise County in the District of Arizona:

a. ███████████ Pearce, Arizona 85625 and all sheds, campers, and storage areas located on the property;

b. 1997 green Jeep Grand Cherokee bearing Arizona Tag ████████

c. Any other vehicle on the property at the time of the search;

d. John Wayne Hargrove, date of birth ████████, who has been residing at the above listed residence.

17.     Based on the following facts, I submit there is probable cause to believe that a search of the items and location listed above and set forth in the following Attachment A will lead to the evidence and instrumentalities of violations of federal law including, but not limited to, 26 U.S.C. § 5861(d), *et seq.* and 18 U.S.C. § 842(i)(1).   I further request to seize all items listed in Attachment B as contraband, instrumentalities, fruits, and evidence of the crime(s).

PROBABLE CAUSE

18.     On May 6, 2023, Customs and Border Protection (CBP) at the Douglas, Arizona Port of Entry (POE) encountered G███ Z████ Z███ was traveling from Mexico and returning to the United States in a 2002 Cadillac de Ville. Z████ was the driver and sole occupant of the vehicle. Both Z████ and the Cadillac were subject to inspection, leading CBP Officers to discover a suspected explosive device located in plain view on the rear driver's side floorboard. The device was built using a commercially manufactured container used in the sale of M&Ms Minis and the container was wrapped in black electrical tape.  Protruding from the device were un-shunted red and blue wires. The leg wires were connected to a commercially manufactured electric match. Within the container was energetic material consistent with a double based smokeless powder.  See Attachment C for photograph of the device found.

19.     Arizona Department of Public Safety (AZDPS) Bomb Squad Sergeant Anton Vasquez responded to the scene where he analyzed the explosive material.  Sergeant

Vasquez documented the device as an improvised destructive device and capable of being "command detonated." Improvised Explosive Devices ("IED") that are command detonated require an operator to activate a firing switch which could be hard wired to the device or a radio signal to the device, such as a cellular phone.

20.     All items were collected at the scene by Sergeant Vasquez and later turned over to ATF SA Mathew Owen. SA Owen reviewed the material as well and agreed the device contained explosive material.

21.     After locating these items on scene, the CBP Officers contacted your Affiant. Your Affiant responded to the scene and performed a post-Miranda custodial interview with Z█████  Z█████ stated he was unaware of the device in his vehicle and could not provide an explanation of the source of the explosive material.  Z█████ provided messages from the Facebook Messenger mobile phone application which showed Z█████s purpose of travel to Mexico was to drop off the children of a friend and included messages of Z█████ reporting to the friend that the children had been dropped off.

22.     On May 9, 2023, Z█████ called your Affiant and advised Z█████ had recalled visiting John Wayne Hargrove at Hargrove's residence, located at █████████ ███ in Pearce, Arizona.  Z█████ claimed he traveled to Hargrove's residence on May 2, 2023, after purchasing an air rifle from Walmart and because he needed Hargrove's assistance installing a scope on the air rifle. Z█████ stated he recalled Hargrove having a device of some kind, which Z█████ could not describe, in Hargrove's hands when Z█████ was last at Hargrove's residence.

23.     On May 10, 2023, Z█████ contacted you Affiant via text message and stated Z█████ had spoken to Hargrove on May 9, 2023 about the device found by CBP on May 6, 2023.  Z█████ claimed Hargrove admitted he had another device of similar type to that found in Z█████s car by CBP in Hargrove's backyard. Z█████ further claimed Hargrove was on federal probation.

24.     A search of law enforcement systems revealed John Wayne Hargrove is listed as the account holder of various utilities at the residence located at █████████

6

█████ n Pearce, AZ. Further checks revealed Hargrove was convicted of possession with intent to distribute a controlled substance on October 18, 2016, a felony, before United States District Judge R. Brack, in the District of New Mexico, in case number 16-CR-02705-RB-2. Hargrove was sentenced on June 7, 2017, to four years confinement and was placed on federal supervision on January 14, 2021, which term expires on January 4, 2025. Hargrove was ordered to attend drug abuse counseling as part of his conditions of supervision.

25. On May 16, 2023, your Affiant traveled to Z████'s residence and asked Z████ if he would be willing to make a consensual phone call to Hargrove, place the call on speaker phone for SA Anders to listen and be able to record the phone call. Z████ agreed to do so.

26. On May 16, 2023, at approximately 11:28 AM, Z████ placed a phone call to phone number ████████. Z████ had the telephone number saved under the name "Thunder" in his contacts list. Z████ claimed "Thunder" is a nickname of Hargrove. Publicly available social media website Facebook searches revealed Hargrove has his phone number listed as ████████. During the conversation, Z████ repeatedly used the name "John" to address the other speaker.

27. A male answered the telephone call from Z████. Z████ reminded the male voice of the trip Z████ made to the male voice's home on May 9, 2023, in relation to the explosive material. The male voice stated, "When I handed it to you. Oh my god. I just said too much." "Once you have something in your possession, it's yours." Later in the conversation, the male voice stated, "I just said enough to fucking implicate myself. If they want to keep me on probation to fuck me over something stupid, proceed to do so." The male voice further confirmed he could not legally possess the explosive material/device.

28. The male voice stated he acquired the materials prior to having been arrested and placed on probation.

29.     The male voice also described the device as a "glorified firecracker" and further described the capabilities of the device as being able to "create a little crater about the size of three maybe four inches in diameter."

30.     The male voice admitted he was responsible for building the device.

31.     On May 16, 2023, your Affiant traveled to ██████████████ in Pearce, Arizona.  Upon driving past the house, your Affiant observed a male matching the description of Hargrove. Your Affiant took photographs of the residence and compared the photographs to publicly available photos from Hargrove's Facebook page which matched what your Affiant observed outside ███████████ in Pearce, Arizona.

<u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>

32.     As described above and in Attachment B hereto, this application seeks permission to search for records and/or information that might be found at the said residence, and/or on the said person, in whatever form they are found. One form in which the records might be found is data stored on a cellular telephone and/or other electronic storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

33.     Although some of the records called for by this warrant might be found in the form of user-generated documents (such as word processor, picture, and movie files), electronic storage media can contain other forms of electronic evidence as well:

a.  Forensic evidence on a cellular telephone or storage medium can indicate who has used or controlled the cellular telephone or storage medium.  This user attribution evidence is analogous to the search for indicia of occupancy while executing a search warrant at a residence.  For example, registry information, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, electronically-stored photographs, and correspondence (and the data associated with the foregoing, such as file creation and last accessed dates)

may be evidence of who used or controlled the cellular telephone or storage medium at a relevant time.

b. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the device was used, the purpose of its use, who used it, and when.

c. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance with particularity a description of the records to be sought, evidence of this type often is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or other electronic device is evidence may depend on other information stored on the electronic device and the application of knowledge about how that device behaves. Therefore, contextual information necessary to understand the evidence described in Attachment B also falls within the scope of the warrant.

34.    I know that when an individual uses an electronic device in relation to the online advertising or sale of firearms and/or ammunition, the individual's device may serve both as an instrumentality for committing the crime and  as a storage medium for evidence of the crime.  The device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The device is also likely to be a storage medium for evidence of crime.  Based on my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, notes as to how the criminal conduct was achieved, records of internet discussions about the crime, and other records that indicate the nature of the offense.

35.     I also know that when an individual is building destructive devices, the individual often requires instructions in the building process and, thus, often utilizes resources on the internet to obtain instructions for building destructive devices.  Individuals also search for components to purchase on the internet.  I know that individuals who are prohibited from the purchase, sale, or possession of firearms and/or destructive materials utilize the internet to acquire materials to avoid legitimate sellers of these materials as well as utilize the internet to maintain their anonymity.

36.     I know that the device found on May 6, 2023 by CBP at the Douglas POE, was described by AZ DPS Sergeant Vasquez as an "IED" and further as "command detonated."  I know that IEDs that are command detonated require an operator to activate a firing switch, which could be hard wired to the device or a radio signal to the device, such as a cellular phone.

## SEARCH METHODOLOGY TO BE EMPLOYED

37.     It would be extremely difficult, if not impossible, to conduct a thorough on-site review of all the potential evidence in this case. Given these constraints, the search methodology to be employed as to any cellular telephones and other electronic storage media is as follows:

a.  All cellular telephones and any form of electronic storage that could contain evidence described in the attachment of this warrant will be seized for an off-site search for evidence that is described in Attachment B to the warrant.  The examination may require authorities to employ techniques, including computer-assisted scans of the entire medium, that might expose many parts of the item to human inspection to determine whether it is evidence described by the warrant. It is anticipated that mirror copies or images of such evidence will be made if the failure to do so could otherwise potentially alter the original evidence.

b. Consistent with the information provided within this affidavit, contextual information necessary to understand the evidence, to identify the user/possessor of the electronic devices, and to establish admissibility of the evidence in subsequent legal proceedings will also be sought by investigative agents.

c. Additional techniques to be employed in analyzing the seized items will include (1) surveying various file directories and the individual files they contain, (2) opening files to determine their contents, (3) scanning storage areas, (4) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in this affidavit and its attachments, and (5) performing any other data analysis techniques that may be necessary to locate and retrieve the evidence in this affidavit and its attachments.

d. Because it is expected that the cellular telephones and any form of electronic storage media may constitute (1) instrumentalities of the offense, (2) fruits of criminal activity, (3) contraband, (4) evidence otherwise unlawfully possessed, and/or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, it is anticipated that such evidence will not be returned to the owner and that it will be either forfeited or ultimately destroyed in accordance with the law at the conclusion of this case. However, if after careful inspection investigators determine such cellular telephones and electronic storage media do not contain (1) instrumentalities of the offense, (2) fruits of criminal activity, (3) contraband or (4) evidence otherwise unlawfully possessed, or (5) evidence of the person who committed the offense and under what circumstances the offense was committed, then such items seized will be returned.

## CONCLUSION

38.    Based upon prior searches of premises and vehicles used by individuals involved in the illegal possession and manufacturing of explosive and destructive devices, I believe that I will find articles of personal property and documents evidencing the identity of persons controlling the premises and vehicles.

39.    Therefore, based on my training, experience, and the aforementioned facts which I believe to be true, I believe that probable cause exists that the above-described property or a portion thereof will be at the described premises when the warrant is served and that such items would constitute evidence of an attempt to possess and/or manufacture explosive and destructive devices by John Wayne Hargrove. With the above information, I formally request the issuance of a search warrant for the aforementioned premises.

40.    The statements made in this affidavit are made based on the personal observations and investigation conducted by your affiant, and information communicated or reported to your affiant during the investigation by other participants in the investigation, as the content of this affidavit indicates.

 I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

CAMERON S
ANDERS
Digitally signed by CAMERON S ANDERS
Date: 2023.05.23 15 28:32 -07'00'

Cameron Anders
Special Agent
Homeland Security Investigations


Subscribed and sworn to telephonically in Tucson, Arizona on May 23, 2023.

Jacqueline M. Rateau
United States Magistrate Judge

ATTACHMENT A

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property to be searched is ███████████ Pearce, Arizona 85625, including all outbuildings and appurtenances thereto, in the County of Cochise, in the Judicial District of Arizona. The residence is further described as a single-story residence with white siding, a dark trim, and a grey roof. The front door faces south toward ██████ Road. The numbers ████ are posted in white numbers on the side of the residence. The front door to the residence has a dark trim around it and a black metal security door. The premises is located in Pearce, Arizona on the residential street, an area located in the south quadrant of the city. ████████Road is located directly off Arizona Highway 191. The numbers ████ are painted on the carport and on the black mailbox posted at the front of the lot. These numbers are visible from the roadway. Latitude and Longitude of this premises is ████████████.





## VEHICLES TO BE SEARCHED

- 1997 green Jeep Grand Cherokee bearing Arizona Tag █████ ;
- Any other vehicles

## PERSON TO BE SEARCHED

- John Wayne Hargrove (DOB: ████████; SSN: ██████████, AZDL: ███████████)

**ATTACHMENT B**

<u>PROPERTY TO BE SEIZED</u>

Agents seek the following items in any form, whether paper or stored in any electrical, electronic or magnetic storage device:

1.  All records relating to violations of 18 U.S.C. § 842(i)(1), 18 U.S.C. § 922(g)(1), 26 U.S.C. § 5861, those violations involving John Wayne HARGROVE and occurring after January 14, 2021, including:

2.  Plastic cylindrical containers, PVC Piping, and galvanized steel piping.

3.  Adhesive glue for PVC piping.

4.  Rolls and scraps of black electrical tape.

5.  Fusing systems to include electric matches, black core or hobby fuses.

6.  Tools that would have been used to manufacture said pipe bombs to include 1/4 to 1/8 inch drill bit, power drill or drill press, or wire cutters.

7.  Smokeless explosive powder or chemicals or materials used to create smokeless explosive powder, specifically nitroglycerin, nitrocellulose, potassium nitrate, nitric acid, charcoal and sulfur.

8.  Power source systems such as batteries, to include but not be limited to 9v batteries.

9.  Electronic components commonly associated with electric initiated explosive and destructive devices such as micro, slide, toggle, pressure, and similar switches, remote control/detonation systems, timing components such as stop watches, clocks, kitchen timers, and alarms.

10.  Literature relating to the manufacture, research, construction, of explosives or explosive or incendiary devices, receipts for components and/or explosives, notes, letters, sales, receipts, or documents relating to the manufacture, depositing or assembly of an explosive device and photographs of explosives or explosive or incendiary devices or of persons in possession of explosives or explosive or incendiary devices.

11.     Letters, notes, books, journals or diagrams associated with the production of prohibited weapons, explosives, or incendiary mixtures or subjects involving state and federal explosive laws.

12.     Records that establish the persons who have control, possession, custody, or dominion over the property and vehicles searched and from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, vehicle registration information or ownership warranties, receipts for vehicle parts and repairs, telephone answering machine introductions, and fingerprints.

13.     Narcotics, counterfeit narcotics, and items of contraband (the possession of which is illegal), scales, smoking devices, packaging for narcotics to include baggies, containers, plastic wraps, and sealants.

14.     Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items, firearms and/or documents including books, records, and any keys or other evidence of the existence and use of any lockers, safety deposit boxes or other secure receptacles located elsewhere than at the premises.

15.     Electronic devices with media storage capacity to include: computers, laptops, tablets, thumb drives, USB devices, CDs, DVDs, memory cards, SD cards, cameras, recording equipment, and drones.

16.     Computers or storage media used as a means to commit the violations described above, including felon in possession of an explosive in violation of 18 U.S.C. § 842(i)(1).

17.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs,

registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

18.     Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

# ATTACHMENT C





Redacted

# UNITED STATES DISTRICT COURT
## *for the District of Arizona*

| | |
|---|---|
| *In the Matter of the Search of*<br>(Briefly describe the property to be searched or identify the person by name and address)<br><br>• John Wayne Hargrove (DOB: ███████; SSN:<br>  ██████, AZDL: ████████<br>• ████████████<br>  Pearce, Arizona 85625<br>  Including all outbuildings and appurtenances<br>  thereto<br>• 1997 green Jeep Grand Cherokee bearing Arizona<br>  Tag ██████<br>• Any other vehicles | No.    23-07277MB (JR)<br><br><br>SEARCH WARRANT |

TO:     Any authorized law enforcement officer

Application and Affidavit having been made before me by a federal law enforcement officer, requesting the search of the following ☒ person or ☒ premises known as *(name, description and/or location)*:

**See Attachment A, attached and incorporated by reference herein**

located in the District of Arizona is believed to conceal *(identify the person or describe the property to be seized)*:

**See Attachment B and C, attached and incorporated by reference herein**

I find that the affidavit(s), and/or any recorded testimony, establish probable cause to search and seize the person or property described.

YOU ARE COMMANDED to execute this warrant on or before _____14 days_____
                                                                         *(not to exceed 14 days)*

☒    in the daytime 6:00 a.m. to 10:00 p.m.          ☐    at any time in the day or night as I find reasonable cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the United States Magistrate Judge who authorized this warrant.

Subscribed and Sworn to telephonically.

____5/23/2023____ ___4:31 p.m.___                              *Jacqueline M. Rateau*
*Date & Time Issued*                                                              *Judge's signature*
Tucson, Arizona                                        Jacqueline M. Rateau, United States Magistrate Judge
*City and State*                                                            *Printed name and title*

# RETURN

Case No.: 23-07277MB (JR)

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED 6/2/2023   11:10 AM | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| 5/23/2023 | | John Wayne HARGROVE |

INVENTORY MADE IN THE PRESENCE OF

Special Agent Dan Kicker

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT
9mm Luger Round
Marijuana
22-250 Remington round
Smokeless Powder in plastic bottle
Methamphetamine pipes
Poor Man's James Bond Vol. book
Biscotti THC
Methamphetamine baggie
Bong with susepcted THC/Hash kit
Pipes with residue (6)
Methamphetamine baggie
chrome Notebook
WCC 12 9mm round
Pipes with residue (2)
Baggie with residue (2)
Marijuana (plastic bottle)

## NOT EXECUTED

☐   This Warrant was Not Executed.
*(check this box if the warrant was never executed and leave the sections above blank.)*

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned to the designated judge.

Date: 6/2/2023

_____
Executing Officer's Signature

Special Agent Cameron Anders
_____
Printed Name and Title

## ATTACHMENT A
## DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is ▮▮▮▮▮▮▮▮▮▮ Pearce, Arizona 85625, including all outbuildings and appurtenances thereto, in the County of Cochise, in the Judicial District of Arizona. The residence is further described as a single-story residence with white siding, a dark trim, and a grey roof. The front door faces south toward ▮▮▮▮ Road. The numbers ▮▮▮ are posted in white numbers on the side of the residence. The front door to the residence has a dark trim around it and a black metal security door. The premises is located in Pearce, Arizona on the residential street, an area located in the south quadrant of the city. ▮▮▮▮ Road is located directly off Arizona Highway 191. The numbers ▮▮▮ are painted on the carport and on the black mailbox posted at the front of the lot. These numbers are visible from the roadway. Latitude and Longitude of this premises is ▮▮▮▮▮▮▮▮▮.





## VEHICLES TO BE SEARCHED

- 1997 green Jeep Grand Cherokee bearing Arizona Tag ████████
- Any other vehicles

## PERSON TO BE SEARCHED

- John Wayne Hargrove (DOB: ████████; SSN: ████████, AZDL: ████████)

**ATTACHMENT B**

<u>PROPERTY TO BE SEIZED</u>

Agents seek the following items in any form, whether paper or stored in any electrical, electronic or magnetic storage device:

1.     All records relating to violations of 18 U.S.C. § 842(i)(1), 18 U.S.C. § 922(g)(1), 26 U.S.C. § 5861, those violations involving John Wayne HARGROVE and occurring after January 14, 2021, including:

2.     Plastic cylindrical containers, PVC Piping, and galvanized steel piping.

3.     Adhesive glue for PVC piping.

4.     Rolls and scraps of black electrical tape.

5.     Fusing systems to include electric matches, black core or hobby fuses.

6.     Tools that would have been used to manufacture said pipe bombs to include 1/4 to 1/8 inch drill bit, power drill or drill press, or wire cutters.

7.     Smokeless explosive powder or chemicals or materials used to create smokeless explosive powder, specifically nitroglycerin, nitrocellulose, potassium nitrate, nitric acid, charcoal and sulfur.

8.     Power source systems such as batteries, to include but not be limited to 9v batteries.

9.     Electronic components commonly associated with electric initiated explosive and destructive devices such as micro, slide, toggle, pressure, and similar switches, remote control/detonation systems, timing components such as stop watches, clocks, kitchen timers, and alarms.

10.    Literature relating to the manufacture, research, construction, of explosives or explosive or incendiary devices, receipts for components and/or explosives, notes, letters, sales, receipts, or documents relating to the manufacture, depositing or assembly of an explosive device and photographs of explosives or explosive or incendiary devices or of persons in possession of explosives or explosive or incendiary devices.

11.     Letters, notes, books, journals or diagrams associated with the production of prohibited weapons, explosives, or incendiary mixtures or subjects involving state and federal explosive laws.

12.     Records that establish the persons who have control, possession, custody, or dominion over the property and vehicles searched and from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, vehicle registration information or ownership warranties, receipts for vehicle parts and repairs, telephone answering machine introductions, and fingerprints.

13.     Narcotics, counterfeit narcotics, and items of contraband (the possession of which is illegal), scales, smoking devices, packaging for narcotics to include baggies, containers, plastic wraps, and sealants.

14.     Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items, firearms and/or documents including books, records, and any keys or other evidence of the existence and use of any lockers, safety deposit boxes or other secure receptacles located elsewhere than at the premises.

15.     Electronic devices with media storage capacity to include: computers, laptops, tablets, thumb drives, USB devices, CDs, DVDs, memory cards, SD cards, cameras, recording equipment, and drones.

16.     Computers or storage media used as a means to commit the violations described above, including felon in possession of an explosive in violation of 18 U.S.C. § 842(i)(1).

17.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs,

registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

18. Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**ATTACHMENT C**





1  GARY M. RESTAINO
2  United States Attorney
   District of Arizona
3  LIZA M. GRANOFF
   Florida Bar No.: 0159433
4  Assistant U.S. Attorney
   United States Courthouse
5  405 W. Congress Street, Suite 4800
   Tucson, Arizona 85701
6  Tele: 520-620-7300
   Email: liza.granoff@usdoj.gov
7  Attorneys for Plaintiff

8              IN THE UNITED STATES DISTRICT COURT

9                 FOR THE DISTRICT OF ARIZONA

10     *In the Matter of the Search of*          No.   23-07277MB (JR)

11     • John Wayne Hargrove (DOB:          ;
         SSN:             , AZDL:           )
12     •                                            MOTION TO SEAL
         Pearce, Arizona 85625
13       Including all outbuildings and
         appurtenances thereto                        Under Seal
14     • 1997 green Jeep Grand Cherokee bearing  (Subject to LRCiv 79.1(d))
         Arizona Tag
15     • Any other vehicles

16

17          Now comes the United States of America, by its undersigned attorneys, and moves

18   to seal for 180 days, subject to LRCiv 79.1(d), the search warrant, application for search

19   warrant, search warrant return and the motion and order to seal in the above-captioned

20   matter, for the reason that the investigation is ongoing and premature disclosure would

21   jeopardize the investigation.

22          The government requests that the AFFIDAVIT be sealed until further order of the

23   court for the reason that the affidavit contains information that if revealed would tend to

24   reveal the identity of confidential informant(s). *United States v. Napier*, 436 F.3d 1133,

25   1139 (9th Cir.2006); *United States v. Farias*, 2012 WL 1424759 (9th Cir. 2012).

26          The government further requests, without further motion to this court, authorization

27   to disclose the sealed search warrant materials to defendant's counsel pursuant to Fed. R.

28

1   Crim. P. 16 or by disclosure agreement between the parties, in any criminal proceedings in

2   which these sealed search warrant materials may be relevant.

3          Respectfully submitted this 23rd day of May 2023.

4                                          GARY M. RESTAINO
                                           United States Attorney
5                                          District of Arizona

6                                          *Liza M. Granoff*

7                                          LIZA M. GRANOFF
                                           Assistant U.S. Attorney
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

*In the Matter of the Search of*

- John Wayne Hargrove (DOB: ███████;
  SSN: ███████, AZDL: ███████
- ███████
  Pearce, Arizona 85625
  Including all outbuildings and
  appurtenances thereto
- 1997 green Jeep Grand Cherokee bearing
  Arizona Tag ███████
- Any other vehicles

No.    23-07277MB (JR)

ORDER TO SEAL

Under Seal
(Subject to LRCiv 79.1(d))

Upon motion of the United States of America, good cause having been shown:

IT IS ORDERED that the search warrant, application for search warrant, affidavit, search warrant return and the motion and order to seal is sealed for 180 days, subject to LRCiv 79.1(d). The AFFIDAVIT is to remain sealed until futher order of the court.

THE GOVERNMENT IS AUTHORIZED to make disclosure to defendant's counsel pursuant to Fed R. Crim. P. 16 or by disclosure agreement between the parties, without further order of the court, in any criminal proceedings in which these sealed search warrant materials may be relevant. Because the documents are under seal, defense counsel is prohibited from further disseminating any search warrant material provided pursuant to this order.

Dated this ____23rd____ day of May 2023.



Jacqueline M. Rateau
United States Magistrate Judge